## BOARD OF COUNTY COM'RS OF PAYNE COUNTY v. STANDARD ACCIDENT INS. CO.

No. 25937. May 21, 1935.

Guy L. Horton, Co. Atty., for plaintiff in error.

Ned Looney, F. C. Love, W. L. Caler, and M. W. Ludington, for defendant in error.

PER CURIAM. This was an action on contract, instituted by an insurance company seeking judgment for the unpaid balance of premium on a workmen's compensation insurance policy written at the request of the board of county commissioners. Plaintiff's amended petition did not allege that there was a fund appropriated by the board of county commissioners and approved by the excise board for the purpose of paying for workmen's compensation insurance, nor that there was at the time the contract was made an unincumbered balance in said fund equal to, or greater than, the amount of the contract, nor that said contract or a purchase order for said insurance was signed and certified by the county clerk, certifying that there was an unincumbered balance equal to or greater than the amount of the contract. Defendant demurred. The demurrer was overruled and an exception was saved. Defendant then answered: First, by general denial; second, that said contract was void for the reason that no appropriation had been made and approved for the purpose of purchasing compensation insurance for said county; third, that said contract was void for the reason that there was no unincumbered balance in any appropriation made and approved by the excise board of Payne county for the purchase of compensation insurance; and, fourth, that the plaintiff did not procure from the proper officials a purchase order for the purchase of said insurance, nor submit the same to the official charged with keeping the appropriations and expenditure records of Payne county. No reply was filed. The trial court made a general finding for the plaintiff, and in addition found at the time the contract was entered into there were ample funds available for the payment of said premium in "county highway fund 12, same being maintenance, road and bridge account," and that said fund was the proper fund out of which said insurance premium should be paid, and rendered judgment for the plaintiff for $387.63, the amount sued for. Defendant appeals to reverse said judgment.

The question presented here is whether or not workmen's compensation insurance is such an item that requires a specific appropriation to be made by the board of county commissioners and approved by the excise board, and whether or not it is mandatory that the contract or purchase order for such insurance be presented to the keeper of the appropriation and expenditure records of the county and signed and certified by him, showing a balance on hand in the proper fund equal to or greater than the amount of the contract.

The plaintiff in error, defendant below, will be referred to hereafter as the "county", and the defendant in error, plaintiff below, will be referred to as "the insurance company."

It was stipulated that the insurance policy was issued at the request of the board of county commissioners. An excerpt from the policy was exhibited which shows the following employees of the county were covered by the policy: Drivers, chauffeurs and their helpers working on paving or road surfacing; drivers, chauffeurs and their helpers working on filling or grading in street or road construction; consulting mechanical, civil and mining engineers and architects not engaged in actual construc-

tion. It was further stipulated that the initial premium payment on said policy in the sum of $300 was made the next day after the policy was written out of the "county highway fund 12, same being maintenance, road and bridge account; said fund being the fund out of which all payments for labor, material, etc., for the usual construction, repair and upkeep of the roads and bridges for said county were to be made, and said class of work being the one upon which laborers were employed and for whose protection and benefit the said policy of workmen's compensation insurance was issued", and that on the date the policy was written there was an unincumbered balance in said fund in the amount of $9,562.32. A copy of the records of the county clerk showing the items of appropriation for the county highway construction and maintenance fund for that fiscal year was attached. This record shows the various items for which appropriations were made and approved and the amounts appropriated and approved for each item, and no appropriation for workmen's compensation insurance is shown. It was stipulated that no specific item of appropriation for compensation and liability insurance appears in the exhibit, and that no such appropriation was ever set up by the commissioners; that no contract for the purchase of said insurance policy was ever certified by the county clerk as provided in section 5970, O. S. 1931; that in due time a correctly executed claim for the unpaid balance of the insurance premium, in the amount of $387.63, was filed by the insurance company and rejected by the county commissioners; that the premium was duly earned by the insurance company, in the event the court should adjudge the contract valid.

In Austin-Western Road Machinery Co. v. Board of County Com'rs of Carter County, 160 Okla. 232, 11 P. (2d) 117, this court said:

"The following requirements are necessary before a valid and binding contract can be made between any person and the board of county commissioners affecting any money under the control of the board of county commissioners in the county highway fund; First, an appropriation must have been made by the board of county commissioners, and approved by the excise board of said county making an appropriation for the kind of work or material sought to be covered in said contract; second, the records in the county clerk's office must show an unexpended balance in said appropriation equal to or more than the amount of the contract sought to be made; third, the contract or purchase order must be signed and certified to by the county clerk certifying that there is an unexpended balance in said appropriated fund to pay the amount of said contract.

"The failure of any one of the above requirements voids the contract."

The insurance company contends that item No. 12, "maintenance of roads and bridges," is broad enough to cover the purchase of workmen's compensation insurance. Had the insurance policy covered only employees who worked in that particular group and received their pay from that specific fund, that contention would merit some consideration, but an examination of the excerpts from the insurance policy, together with the copy of the records of the county clerk showing the items of appropriation, discloses that the policy covered employees who were to be paid from three distinctly different funds, for which separate appropriations were made, namely: No. 12, maintenance of roads and bridges; No. 26, construction of said roads; No. 35, construction of bridge. Section 12678, O. S. 1931, specifically provides that when appropriations have been made and approved, the funds shall be used for the specific purpose named and for no other purpose whatsoever. The stipulation above referred to does not say that the insurance policy was issued for the employees who received their pay from fund 12 only, but that it was for the laborers employed in that class of work.

The insurance company takes the position that section 5970, O. S. 1931, which requires contracts or purchase orders to be submitted to the county clerk for certification, has no application here, for the reason that compensation insurance is neither "supplies," "material," "equipment," nor a "contract for public work." The words above quoted which are used in the statute under consideration are used to specify the purchasing agents of the county to whom the statute is applicable, and not for the purpose of limiting the application of the statute to certain purchases and contracts. In the case of C. D. Coggeshall & Co. v. Smiley, Co. Treas., 142 Okla. 8, 285 P. 48, this court had under consideration section 1, chapter 49, Session Laws 1925, and declared the provisions of the statute applicable to all contracts. The court said:

"At one time in Oklahoma public officials entered into contracts without regard to the amount of the appropriations made. They acted on the theory that the inhibition in a statute applied only to the issuing of warrants against the appropriation. The result of this was to exhaust the appropriation by the issuance of warrants, leaving

contracts entered into prior to those for which the warrants were issued without any appropriation for the payment thereof, and judgments were then taken on these prior contracts. By this means municipalities expended more money than was appropriated.

"The Legislature, in 1925, in order to correct this condition, adopted Senate Bill No. 209, which appears as chapter 49, S. L. 1925. The effect of this act was to require all contracts to be submitted to the officers charged with keeping the expenditure records and to void any contract not certified by the officer charged with keeping the expenditure record to be within the appropriation. The act further provided that the amount of the contract should be charged against the unexpended appropriation when the contract was made; the latter provision reading as follows: 'Section 2. The cost of all supplies, material and equipment and the contract price of all public work shall be charged against the appropriation as made by the excise board at the time purchase is made or contract let, and the balance in the appropriations account after such charge is deducted shall constitute the unincumbered balance available for expenditure.'"

In the Austin Western Road Machinery Co. Case, supra, the court specifically affirmed the Coggeshall Case, and decreed that any contract or purchase order not certified by the officer in charge of the appropriations and expenditure records, showing that there was an unincumbered balance in the proper fund sufficient to pay the amount of the contract, was void.

The case of Board of Com'rs of Carter County v. Landrum, 163 Okla. 199, 21 P. (2d) 736, is relied upon by the insurance company to sustain its contention. It is evident from the following language in that case that all of chapter 49, Session Laws 1925, was considered invalid. In discussing that chapter of the 1925 Session Laws, the court said:

"Section 5 of the act was declared unconstitutional by this court in Walker-Taylor Co. v. Board of County Commissioners of Oklahoma County, 125 Okla. 226, 257 P. 324 327. In the body of the opinion it is said:

"'In the instant case it is clearly evident that the purpose and intent of the subject-matter as contained in section 5 of the act in question is wholly absent from the title to said act, and it is further evident that all other matters mentioned in said act are merely incidental to section 5 thereof.'

"Even though we consider all the other sections of the act valid, the provisions thereof could hardly be said to be applicable to employment of day laborers on county highways."

See, also, Clarence L. Boyd Co. v. Blachly, 171 Okla. 626, 43 P. (2d) 462, and Western Paint & Chemical Co. v. Board of Commissioners of Washington County, 171 Okla. 1, 42 P. (2d) 533.

All the provisions of chapter 49, Session Laws 1925, applicable to this case, have been re-enacted and are incorporated in the 1931 Statutes, and were in full force and effect when the purchase of compensation insurance was made in the instant case. In the Austin-Western Road Machinery Case, supra, section 1, chapter 49, 1925 Session Laws, which is the same as section 5970, O. S. 1931, was by this court considered valid, and it was construed as above shown. This court there said that the restrictions placed upon the people's agents and officials in expending public money are for the protection of the people. There is no greater need for this protection when officials are purchasing supplies, materials, and equipment than when they are purchasing compensation insurance.

It follows that there was error in overruling the demurrer of defendant to the amended petition of plaintiff, and the order of the trial court is reversed.

The judgment of the trial court is reversed.

The Supreme Court acknowledges the aid of Attorneys R. S. Norvell, Louis A. Ledbetter, and B. F. Davis in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of the law and facts was prepared by Mr. Norvell, and approved by Mr. Ledbetter and Mr. Davis, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, PHELPS, and CORN, JJ., concur.