## BOARD OF COM'RS OF TULSA COUNTY v. COLORED HOSPITAL ASS'N.

No. 27489.   Sept. 28, 1937.

Rehearing Denied Nov. 30, 1937.

Holly L. Anderson, Former Co. Atty., Fred A. Fulghum, Former Asst. Co. Atty., Dixie Gilmer, Co. Atty., and John F. Conway, Asst. Co. Atty., for plaintiff in error.

E. D. Gillespie, for defendant in error.

GIBSON, J. The Colored Hospital Association of Tulsa brought suit against the board of county commissioners of Tulsa county to recover $890.45 for hospitalization of paupers for the month of June, 1931. The contention that the services were performed under an agreement with the county commissioners, first set up in the pleadings, was afterwards abandoned and the hospital relied upon the so-called statutory liability of the county to care for the indigent sick in emergency cases, as discussed in Board of Com'rs of Garfield County v. Enid Springs Sanitarium & Hospital, 116 Okla. 249, 244 P. 426.

The trial court rendered judgment against the county allowing the claim of the hospital in the full amount. The county here urges that there was a failure of proof and that the hospital did not show a compliance with section 5970 and companion sections of Oklahoma Statutes 1931. If the claim was on contract, these sections, including 5977 and 5978, would apply. Holcombe v. Major County, 173 Okla. 539, 49 P. (2d) 106; Oklahoma Natural Gas Corporation v. City of Enid, 179 Okla. 283, 65 P. (2d) 440.

But, since the hospital claims that its cause is not founded upon contract, other than implied by the statute, we assume for this case that said sections apply only where a contractual liability is to be enforced. Nevertheless the case is governed by the rules announced in the following cases: Board of Com'rs of Carter County v. Dowdy & Shivers, 133 Okla. 9, 270 P. 836; Anadarko Funeral Home v. Scarth, 173 Okla. 103, 46 P. (2d) 539; Board of County Com'rs of Tulsa County v. Morningside Hospital, 175 Okla. 242, 51 P. (2d) 928; and the three cases cited, supra.

From these cases we deduce the following rules applicable here. The county commissioners as overseers of the poor can make the county liable for services rendered to a poor person only where the poor person is in fact indigent, is actually settled in the

county, or actually residing in said county, or where the relief is only temporary until it can be ascertained whether said person has legal residence in the county or has actually removed to said county. Furthermore, it is not enough that there was originally an appropriation for the purposes of taking care of the sick indigent, it must be shown further that the appropriation at the time of the rendering of said services or when the county's liability is fixed has not been exhausted.

The duty to oversee the poor is imposed on the county commissioners. This duty, so far as determining who are within the class of indigent poor, is not delegable, but the commissioners may approve acts done by others for such poor. So a person claiming compensation for services rendered to such poor must be authorized in advance to perform such services or take the risk of having the commissioners ratify or approve his acts. In the case of Board of Garfield County v. Enid Springs Sanitarium & Hospital, supra, this court said:

"* * * The fact that the physician submitting the claim had not been authorized by a majority of the board at a regular meeting thereof to render the services will not deprive the board of the right to examine into the facts, and, if found to be a genuine emergency case, to allow the claim when the same is based upon reasonable charges and the fund provided by law is sufficient to pay for the same."

This holding should not be extended so as to place liability upon a county for every act rendered by a physician, a hospital, or other person as an emergency act to an indigent person, no matter how high or humanitarian may be the motive prompting the service. Some agency had to be given the power to determine what poor persons are entitled to county help. This agency is the county commissioners acting as overseers of the poor. The county can be held liable only when the county commissioners as overseers of the poor approve.

Each poor person is a separate problem, and the liability of the county must be determined by consideration of each separate case. We must so declare the law until the Legislature alters it. The fact that lives may be endangered does not make the charge legal. Board of Commissioners of Tulsa County v. Morningside Hospital, 175 Okla. 242, 51 P. (2d) 928. No duty exists to such an extent that the usual limitations on expenditures may be disregarded. When there are different cases demanding succor, and there are not enough funds to provide for all, the county commissioners, as overseers of the poor, have the duty to determine the order in which aid is to be given, and the courts cannot substitute their judgment for the judgment of the commissioners—a judgment of policy, not of law.

In the instant case it appears that there were many other cases which the county commissioners thought entitled to aid as paupers. Prima facie, at least, the allowance of claims for services rendered to others was a declaration on the part of the board that these others had priority in the incurring of indebtedness thereof.

In the case of ordinary contracts indefinite in amount, we have held that no liability exists until claim is filed, for only then does the amount due become certain enough to be charged against the appropriation account. Oklahoma Natural Gas Corporation v. City of Enid, supra. In cases involving the funds for the poor, we have held not only that the indebtedness must be within the appropriation, but that:

"No share or interest in said unexpended fund could vest in plaintiffs without the amount thereof being capable of definite ascertainment. * * *

"The amount cannot be made certain until performance, and if performance is postponed until after exhaustion of the fund, the debt thereby and then created is a debt in excess of the appropriation,—not so much because the performance took place after the fund was exhausted, but (and this is the real reason) because it was impossible, before the fund was exhausted, to earmark any specific amount in said fund for payment for performance under the contract. * * *" Anadarko Funeral Home v. Scarth, 173 Okla. 103, 46 P. (2d) 539.

In the instant case it was incumbent upon the hospital not only to prove the authorization or approval of the county commissioners as overseers of the poor, but also that there was originally an appropriation that had not been exhausted by the rendering of similar services to others; that is, that there were funds not "earmarked" for others in a similar situation sufficient for the payment of the claim which could mature only by performance or other fixing of the county's liability. Recovery can be had only for those services clearly established as completed by performance and fixing of the county's liability

prior to the exhaustion of the fund by similar performance and fixing of the county's liability by others. This proof is lacking in the record.

The cause is accordingly remanded, with directions to grant a new trial under the rules herein announced.

OSBORN, C. J., and RILEY, WELCH, CORN, HURST, and DAVISON, JJ., concur. BAYLESS, V. C. J., and PHELPS, J., absent.